[Cite as *State ex rel. Sheets v. Indus. Comm.*, 2017-Ohio-1169.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cynthia D. Sheets, | : | |
| Relator, | : | |
| | : | No. 16AP-22 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 30, 2017

**On brief:** *Philip J. Fulton Law Office,* and *Chelsea Fulton Rubin*; *Barry A. Trattner*, for relator. **Argued:** *Chelsea Fulton Rubin.*

**On brief:** *Michael DeWine,* Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio. **Argued:** *Kevin J. Reis.*

**On brief:** *Barno Law, LLC, John C. Barno, Zeboney N. Barranada,* and *Jamison S. Speidel,* for respondent Cellco Partnership. **Argued:** *John C. Barno.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

**{¶ 1}** Relator, Cynthia D. Sheets ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied her temporary total disability ("TTD") compensation and to enter an order granting said compensation.

{¶ 2}   This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this court deny claimant's request for a writ of mandamus. Claimant has filed objections to the magistrate's decision.

{¶ 3}   Claimant argues in her first objection that the magistrate erred when she did not apply *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916 ("*Gross II*") to the instant case and created new law. Claimant contends that *Gross II* stands for the proposition that the voluntary abandonment doctrine cannot be applied to pre-injury conduct or conduct contemporaneous with the injury, and this court found so in *State ex rel. Ohio State Univ. Cancer Research Hosp. v. Indus. Comm.*, 10th Dist. No. 09AP-1027, 2010-Ohio-3839, and *State ex rel. Ohio Welded Blank v. Indus. Comm.*, 10th Dist. No. 08AP-772, 2009-Ohio-4646, where we concluded that a claimant can abandon a former position of employment only if the claimant has the physical capacity for employment at the time of abandonment. Here, claimant points out, she was temporarily and totally disabled at the time of her termination and was unable to return to her former position at the time of termination. She also contests the commission's finding that *Gross II* was inapplicable because the conduct leading to her termination was not related to the allowed injury.

{¶ 4}   We disagree with claimant's arguments. We find *Gross II* distinguishable from the present case. In *Gross II*, the Supreme Court of Ohio found that a pre-injury infraction undetected until after the injury is not grounds for concluding a claimant voluntarily abandoned his/her employment. Here, claimant's pre-injury infraction was discovered prior to her injury. Not only was the pre-injury code of conduct violation discovered prior to the injury in the present case, but the decision to terminate claimant for such violation was determined prior to the injury.

{¶ 5}   Furthermore, in *Gross II*, the employee was terminated based on the conduct that caused the injury. The court concluded that if the employee's departure from the workplace was causally related to the injury, it does not preclude the employee's eligibility for TTD compensation. In the present case, claimant was not terminated based on the conduct that caused the injury. Claimant's conduct that led to her termination

occurred prior to her termination. Thus, claimant's departure from the workplace was not causally related to the injury.

{¶ 6}  One concern regarding termination for pre-injury conduct is apparent. The fear is that an employer may use pre-injury conduct as a pretext for terminating an employee who has been subsequently injured. The circumstances in the present case, however, eliminate that concern, as noted by the magistrate. Here, the paperwork to terminate claimant had already been signed and approved (on a Thursday and Friday) several days before claimant was injured (on a Monday). The employer, Cellco Partnership, respondent, had already decided to terminate claimant at the time of the injury, and there is nothing in the record to suggest the termination was pre-textual.

{¶ 7}  Despite claimant's argument to the contrary, the magistrate's finding that "[n]othing in the court's decision in *Gross II* provides that pre-injury conduct can never be used to defeat payment of TTD compensation" is correct.  (Appended Mag. Decision at ¶ 47.)  The court in *Gross II* stated, "[t]he [voluntary-abandonment] doctrine has never been applied to preinjury conduct or conduct contemporaneous with the injury." *Id.* at ¶ 19. Thus, the Supreme Court in *Gross II* never indicated that the voluntary-abandonment doctrine can never be applied to pre-injury conduct, and it did not address circumstances like those in the present case, in which the decision to terminate had already been made prior to the workplace injury.

{¶ 8}  The magistrate's decision is consistent with one of the main principles set forth in *Gross II*: "To be eligible for TTD compensation, 'the claimant must show not only that he or she lacks the medical capability of returning to the former position of employment but that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings. In other words, it must appear that, but for the industrial injury, the claimant would be gainfully employed.' " *Id.* at ¶ 15, quoting *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, ¶ 35. In the present case, because the unique circumstance that the decision to terminate claimant had already been made prior to the industrial injury, we can be certain that claimant would not have continued to be gainfully employed even if she had not been injured. In other words, there was no cause-and-effect relationship between her injury and her loss of

earnings; instead, there was a direct cause-and-effect relationship between claimant's misconduct and her loss of earnings.

{¶ 9}   As the court summed up in *Gross II*, "[t]he distinctions between voluntary and involuntary departure are complicated and fact-intensive." *Id*. at ¶ 23.   An underlying principle, however, is that if an employee's departure from the workplace " 'is causally related to his injury,' " it is not voluntary and should not preclude the employee's eligibility for TTD compensation. *Id*., quoting *State ex rel. Rockwell Internatl. v. Indus. Comm*., 40 Ohio St.3d 44, 46 (1988); *McCoy* at ¶ 19.   To be sure, the circumstances in the present case are unique from those cases relied on by claimant. In none of those cases had the employer already decided and completed administrative paperwork approving termination of the employee immediately prior to the industrial injury. In such a case, claimant's departure from the workplace was not causally related to her injury and was voluntary and, thus, precluded her from eligibility for TTD compensation. For these reasons, claimant's first objection is overruled.

{¶ 10} Claimant argues in her second objection that the commission had no basis to exercise continuing jurisdiction. Although before the commission the employer alleged the staff hearing officer ("SHO") committed a clear mistake of law by following *Gross II* and finding claimant was entitled to TTD compensation, claimant contends the SHO did not commit a mistake of law by adhering to the Supreme Court precedent in *Gross II*. We first note that claimant failed to raise this issue in her brief before the magistrate. Nevertheless, given our finding above that the commission did not err when it found *Gross II* did not apply here to entitle claimant to TTD compensation, claimant's argument under her second objection is overruled. The commission properly exercised jurisdiction based on a clear mistake of law, which is one of the five possible bases for exercising continuing jurisdiction pursuant to *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454 (1998). Therefore, we overrule claimant's second objection.

{¶ 11} Claimant argues in her third objection that the commission and magistrate erred when they created policy, which is not their role. Claimant contends the commission and magistrate did not have the authority to ignore the Supreme Court's decision in *Gross II* and create new law and policy. However, again, given our above finding that *Gross II* is distinguishable and not controlling here, we cannot conclude that the commission and

magistrate ignored *Gross II*. Instead, the commission and magistrate reviewed the facts of the case and found the legal precedent in *Gross II* inapplicable to the present circumstances. Therefore, we overrule claimant's third objection.

{¶ 12} Claimant argues in her fourth objection that the commission, and not the magistrate, is the arbiter of the credibility and weight to be given to the evidence. Specifically, claimant contends the magistrate made findings of fact that were not found by the commission in its order. Claimant cites two specific examples. Claimant first cites the magistrate's findings that her termination was approved by Michelle Worthington, the associate director, and the human resource consultant on Thursday, October 3, 2013; the termination was approved by the director, human resource associate director, and human resource director, on Friday, October 4, 2013; and it was decided that claimant would be terminated Monday, October 7, 2013.

{¶ 13} Claimant also cites the magistrate's findings that on Monday, October 7, 2013, before the manager arrived to terminate her, claimant tripped, injured herself, and returned to work with restrictions, and there was no evidence that claimant's manager or claimant herself had any reason to believe that she would ultimately file a workers' compensation claim or that her injuries would be as extensive as they ultimately became. Claimant contends these findings of fact were nowhere in the commission's order and did not play any role in the decision of the district hearing officer, SHO, or commission.

{¶ 14} However, we do not find the magistrate's above findings infringed on the commission's power as ultimate arbiter of credibility or its power to evaluate evidence and determine the weight to be given such evidence. In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility

and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 15} Here, although the commission did not specifically set forth the underlying facts it relied on in arriving at its ultimate determination, the evidence the magistrate cited was the underlying factual predicate for the commission's determination. The commission found:

> [I]t is reasons other than the allowed conditions in the claim preventing the Injured Worker from working. The evidence presented at hearing and contained in the record indicates the Injured Worker was working in a modified light-duty position at the time she was terminated from her employment. The Commission finds the reason the Injured Worker was not working over the period for which compensation is requested has nothing to do with the allowed conditions in the claim. The Injured Worker is not working because she was terminated from her job for violating the Employer's Code of Conduct Policy.
>
> * * *
>
> In this case, unlike Gross II, the Injured Worker's termination was completely unrelated to her industrial injury on 10/07/2013, when she tripped and fell to the floor. The only reason the Injured Worker was terminated was because she allowed an unauthorized person access to a client's private information in violation of the Code of Conduct Policy. Since the conduct leading to the Injured Worker's termination in this case is not related to the allowed injury, the Commission finds the Jones case is applicable, and Gross II is not.

(Stip. of Evidence at 202.)

{¶ 16} The evidence cited by the magistrate regarding the Thursday, October 3, and Friday, October 4, 2013 approval of termination by the employer's administration is factual evidence included in the record. This evidence supports the commission's conclusion that the reason claimant was not working had nothing to do with the allowed conditions in the claim; claimant was not working because she was terminated from her job for violating the employer's code of conduct policy. Claimant was required to show that the commission's order was not supported by any evidence in the record, and the

magistrate's citation to the above factual evidence demonstrated the order was supported by evidence in the record. The facts cited by the magistrate provided some evidence from the record to support the commission's findings.

{¶ 17} As for the magistrate's reliance on the fact that there was no evidence that claimant's manager or claimant herself had any reason to believe that she would ultimately file a workers' compensation claim or that her injuries would be as extensive as they ultimately became, these facts further buttress the commission's findings. These facts support the commission's conclusion that claimant was not terminated due to her allowed conditions but because of her violation of the employer's code of conduct. That there was no evidence to believe claimant would file a claim or that her injuries were as serious as they turned out to be tends to demonstrate that her termination was not due to pretext but truly based on her work-policy violation. For these reasons, we find the magistrate properly relied on the evidence in the record to provide some evidence to support the commission's conclusions. Therefore, we overrule claimant's fourth objection.

{¶ 18} After an examination of the magistrate's decision, an independent review of the record, pursuant to Civ.R. 53, and due consideration of claimant's objections, we overrule the objections and adopt the magistrate's findings of fact and conclusions of law. Claimant's writ of mandamus is denied.

*Objections overruled;*
*writ of mandamus denied.*

SADLER and LUPER SCHUSTER, JJ, concur.

_____

[Cite as *State ex rel. Sheets v. Indus. Comm.*, 2017-Ohio-1169.]

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Cynthia D. Sheets, | : | |
| Relator, | : | |
| v. | : | No. 16AP-22 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Cellco Partnership, Verizon Wireless, | : | |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 31, 2016

*Philip J. Fulton Law Office,* and *Chelsea Fulton Rubin,* for relator.

*Michael DeWine,* Attorney General, and *Kevin Reis,* for respondent Industrial Commission of Ohio.

*John C. Barno, Zeboney N. Barranada,* and *Jamison S. Speidel,* for respondent Cellco Partnership.

IN MANDAMUS

{¶ 19} Relator, Cynthia D. Sheets, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied her application for temporary total disability ("TTD") compensation, and ordering the commission to find that she is entitled to that compensation.

Findings of Fact:

{¶ 20} 1. Relator had been an employee at Cellco Partnership, Verizon Wireless ("Verizon") since April 2007.

{¶ 21} 2. On September 9, 2013, a customer lodged a complaint that relator had permitted a third-party to access and view the customer's account.

{¶ 22} 3. The unauthorized access is specifically prohibited by Verizon's guidelines and Verizon began an investigation.

{¶ 23} 4. On Thursday, October 3, 2013, when questioned about the matter, relator denied the allegations. Video surveillance was reviewed which specifically demonstrated that relator did, in fact, allow an unauthorized person to view the account information of a client.

{¶ 24} 5. Following the interview with relator on October 3, 2013, relator's manager, Michelle Worthington, prepared a business request for termination of relator's employment review indicating that the reason for the request was "Code of Conduct." The review document specifically provides:

> **Triggering Event (include detailed information):** On 9/9 rm received a customer complaint from Henry Gehring that his account information was shared with his ex wife's friend. Upon review of the account, Cynthia was shown as accessing the account twice earlier that day. When questioned by corporate security on 10/3 Cynthia recalled the situation and claimed that a regular customer of hers (Jen Mulchay) came in asking to do an AOL on the account. Cynthia said once she saw Jen was not authorized on the account she told her she couldn't help process the transaction and gave her information on how to request through customer service once she gained authorization. She also said that Jen tried to come around the counter to view the screen, but she told her she couldn't be back there. Video pulled by corporate security shows that Cynthia allowed Jen behind the counter 3 separate times and they reviewed the account information together, for up to 8 minutes each time.

(Emphasis sic.)

{¶ 25} 6. On the document, Michelle Worthington was asked to indicate whether or not relator had a known disability or medical condition and the response was no.

{¶ 26} 7. Thereafter, relator's termination was approved by Michelle Worthington, the associate director, and the human resource consultant on Thursday, October 3, 2013 and was approved by the director, human resource associate director, and human

resource executive director, on Friday, October 4, 2013. It was decided that relator would be terminated on Monday, October 7, 2013.

{¶ 27} 8. On the morning of October 7, 2013, relator sustained an injury when she tripped while at work. Relator was seen at the Cleveland Clinic and released to return to work as a greeter.

{¶ 28} 9. Later that same day, October 7, 2013, relator's employment was terminated as a result of her violating the code of conduct.

{¶ 29} 10. On October 17, 2013, Dr. Patel completed a Medco-14 indicating that relator was temporarily and totally disabled as of October 7, 2013.

{¶ 30} 11. Relator's claim was eventually allowed for the following conditions:

> Sprain neck; sprain right shoulder/arm; contusion chest wall, bilateral; right knee sprain; sprain right 4th finger; sprain right fifth finger; sprain left fourth finger; disc herniation C5-6; disc herniation C6-7.

{¶ 31} 12. Relator's request for TTD compensation was heard before a district hearing officer ("DHO") on January 13, 2014. The DHO granted the requested compensation beginning October 8, 2013 based upon the Medco-14s completed by Dr. Patel. At the hearing, the employer argued that TTD compensation was not properly payable because relator was terminated for reasons unrelated to the injuries in her claim. The DHO found that relator's discharge could not be used to preclude her award of TTD compensation, stating:

> At hearing, the Employer's attorney argued that temporary total disability compensation was not properly payable since the Injured Worker was terminated due to reasons unrelated to the claim later in the day on 10/07/2013. On 10/03/2013, the Injured Worker met various people regarding an alleged "unauthorized use" incident that occurred on or about 09/09/2013. The Injured Worker sustained a slip and fall injury that was certified by the Self-Insuring Employer on 10/07/2013 and was released to return to work with restrictions on that date. The Injured Worker was terminated on 10/07/2013 after returning to work in her light duty capacity. Under these facts, the Injured Worker may have been properly terminated, but that termination does not preclude the receipt of temporary total disability compensation because, pursuant to [*State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5 (1996)] and its progeny, the Injured Worker was unable to return to work at

her former position of employment at the actual time of firing.

{¶ 32} 13. The employer appealed and the matter was heard before a staff hearing officer ("SHO") on July 15, 2014. The SHO modified the prior DHO order, granted TTD compensation, and rejected the employer's argument that TTD compensation was not payable due to relator's voluntary abandonment, stating:

> Temporary total disability compensation is to be paid for the period of 10/08/2013 through 07/15/2014. This finding is based on the 10/07/2013 disability slip from the Cleveland Clinic Center for Corporate Health and the 11/21/2013, 12/22/2013, 01/06/2014, 02/04/2014, 02/25/2014, 03/19/2014, 05/13/2014 and 07/08/2014 MEDCO-14s of M.P. Petal, M.D. Further temporary total is to be paid on submission of proof of temporary total disability causally related to the allowed conditions. The Self-Insuring Employer argued that the Injured Worker is not eligible to receive temporary total as her 10/07/2013 termination constitutes a voluntary abandonment of employment and she has not returned to the workforce. The Hearing Officer does not find this to be a well taken argument. On 10/03/2013 the Injured Worker was questioned in connection with an incident on 09/09/2013 during which she had allegedly given access to a customer's account to a person who did not have authorization to access the account. This action was in violation of a written policy that specified termination as a possible consequence of violation. On the date of the injury the Injured Worker sought treatment at the Cleveland Clinic. She was released to return to modified duty which the Self-Insuring Employer provided. On that same day she was terminated for violation of the written policy concerning unauthorized access to a customer account. The Self-Insuring Employer cited [*State ex rel. Lackey v. Indus. Comm.,* 129 Ohio St.3d 119, 2011-Ohio-3089] and argued that the termination was involuntary as it was not related to the Industrial Injury. The involuntary termination would render the Injured Worker ineligible to receive temporary total. The Hearing Officer finds nothing in Lackey that would overrule the holding of the same Court in [*State ex rel. Gross v. Indus. Comm. ("Gross II")*, 115 Ohio St.3d 249, 2007-Ohio-4916]. In [*Gross* II] the Court stated that pre-injury conduct had never been used as a basis for determination that a termination was a voluntary abandonment. Since the Injured Worker's violative conduct here occurred prior to the injury it may not be used to deny

temporary total. All proof on file was reviewed and considered.

{¶ 33} 14. The employer's further appeal was refused by order of the commission mailed August 12, 2014.

{¶ 34} 15. Thereafter, the employer filed a request for reconsideration and the commission determined the employer had presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration.

{¶ 35} 16. The matter was heard before the full commission on December 9, 2014. The commission vacated the prior SHO order and denied relator's request for TTD compensation finding that the SHO's reliance on *State ex rel. Gross v. Indus. Comm. ("Gross II")*, 115 Ohio St.3d 249, 2007-Ohio-4916, was misplaced.

{¶ 36} First, the commission analyzed the relevant case law which includes *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.*, 29 Ohio App.3d 145 (10th Dist.1985), *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42 (1987), and *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, which all held that, in order to qualify for TTD compensation, an injured worker must show not only that he or she lacks the medical capability to return to the former position of employment but that a causal relationship exists between the industrial injury and the actual loss of earnings. The commission found that it was clear the employer terminated relator because she violated the company's written work rule by allowing an unauthorized person to view the account of another and that it was clear relator's subsequent injury was not the reason why she was terminated.

{¶ 37} With regards to the inapplicability of *Gross II,* the commission's order provides:

> It is the finding of the Commission the Staff Hearing Officer made a clear mistake of law in relying on the case of State ex rel. Gross v. Indus. Comm., 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162 ("Gross II"), in finding there was no voluntary abandonment of employment, and the Employer's Request for Reconsideration, filed 08/29/2014, is granted.
>
> It is the further finding of the Commission the Injured Worker voluntarily abandoned her employment, and based on this finding, her C-86 Motion requesting temporary total disability compensation, filed 11/12/2013, is denied. Therefore, it is the order of the Commission that temporary

total disability compensation from 10/08/2013 through 11/22/2014, the date last certified by an attending physician, is denied.

In State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145, 504 N.E.2d 451, the Court determined the purpose of temporary total disability compensation is to compensate an injured worker for the loss of earnings while the injured worker is recovering from an industrial injury. The Court held where an injured worker has taken action that would preclude a return to employment, even if the injured worker were able to do so, the injured worker is not entitled to temporary total disability compensation since it is the injured worker's own action, and not the industrial injury, that prevents the injured worker from returning to his former position of employment. Id. at 147.

In State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42, 517 N.E.2d 533, the Court stated, "While a prisoner's incarceration would not normally be considered a 'voluntary' act, one may be presumed to tacitly accept the consequences of his voluntary acts. When a person chooses to violate the law, he, by his own action, subjects himself to the punishment which his state has prescribed for him." The Court found in Ashcraft the injured worker's incarceration would, excluding the consideration of the recognized work-related injury, preclude the receipt of temporary total disability compensation. Id.

In State ex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, the Court held:

Thus, in order to qualify for TTD [temporary total disability] compensation, the claimant must show not only that he or she lacks the medical capability of returning to the former position of employment but that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings. In other words, it must appear that, but for the industrial injury, the claimant would be gainfully employed.

Id. at para. 35.

The Commission finds in this case it is reasons other than the allowed conditions in the claim preventing the Injured Worker from working the evidence presented at hearing and contained in the record indicates the Injured Worker was

working in a modified light-duty position at the time she was terminated from her employment. The Commission finds the reason the Injured Worker was not working over the period for which compensation is requested has nothing to do with the allowed conditions in the claim. The Injured Worker is not working because she was terminated from her job for violating the Employer's Code of Conduct Policy.

The Staff Hearing Officer's reliance on Gross II, is found to be misplaced as Gross II does not change the requirement set forth in Jones, Ashcraft, and McCoy, that the basis for the loss of earnings must be solely related to the work injury and not to be a voluntary act of the injured worker. In Gross II, the injured worker's conduct caused the injury leading to his termination, placing water into a deep-fryer, did not preclude the payment of temporary total disability compensation.

In this case, unlike Gross II, the Injured Worker's termination was completely unrelated to her industrial injury on 10/07/2013, when she tripped and fell to the floor. The only reason the Injured Worker was terminated was because she allowed an unauthorized person access to a client's private information in violation of the Code of Conduct Policy. Sine the conduct leading to the Injured Worker's termination in this case is not related to the allowed injury, the Commission finds the Jones case is applicable, and Gross II is not.

{¶ 38} Thereafter, the commission found that the employer met its burden of proving that relator violated a written work rule, previously defined as a dischargeable offense, which relator knew or should have known was prohibited and could lead to her termination. Specifically, the commission's order provides:

It is the further finding of the Commission the Injured Worker voluntarily abandoned her employment, and based on this finding, her request for temporary total disability compensation is denied.

The Injured Worker was injured on 10/07/2013, when she tripped and fell forward onto the floor, sustaining the injuries of record. She returned to work in a restricted light-duty capacity later the same day, 10/07/2013, and was terminated at the end of work that same day. These facts were not disputed at the hearing.

Pursuant to State ex rel. Louisiana-Pacific Corp. v. Indus. Comm., 72 Ohio St.3d 401,1995-Ohio-153, 650 N.E.2d 469, a termination from employment by the employer is considered a voluntary abandonment when the injured worker engages in clearly defined prohibited conduct, previously defined as a dischargeable offense, and the injured worker knew or should have known the conduct was prohibited and could lead to termination.

It is the finding of the Commission the Injured Worker was terminated on 10/07/2013, for violating the Employer's Code of Conduct Policy. The Employer's policy, titled Your Code of Conduct, states under Section 4.1.1, Customer Privacy and Communications, paragraph 3, page 19, that employees may not access, view, share, or distribute customer information without a proper business reasons. The policy goes on to state in the Conclusion section, page 30, that violations of the law, the Code, and other company policies, procedures, instructions, practices, and the like can lead to disciplinary action, up to and including termination of employment. Mr. Gerot testified the policy is provided to all employees, training is done online, and all employees must sign off on the training. A log of the online training courses completed by the Injured Worker, titled VZLearning History - Completed, documents on the last page, under VZW2491, Your Code of Conduct: Online Course, the Injured Worker completed this course on 08/02/2010. This evidence shows the Injured Worker was aware, or should have been aware, that allowing a customer to access the information of another customer when such access had not been authorized and without a proper business reason was grounds for disciplinary action up to and including termination.

The Employer's 10/03/2013 Business Request For Termination Of Employment Review form, under the Reason for Request section, indicates as follows: The Employer received a customer complaint from a Henry Gehring that his account information was shared with his ex-wife's friend. Upon review of the account, the Injured Worker was shown accessing the account twice earlier that day. When questioned by the Employer about this review on 10/03/2013, the Injured Worker indicated she recalled the situation, and a regular customer of hers, Jen Mulchay, came in asking to do an AOL on the account. The Injured Worker stated once she saw Ms. Mulchay was not authorized on the account she told her she could not help her and gave her information on how to make her request through customer service once she gained authorization. The Injured

Worker also said Ms. Mulchay tried to come around the counter and view the screen, but the Injured Worker told Ms. Mulchay she could not be back there. However, video pulled by corporate security shows that the Injured Worker allowed Ms. Mulchay behind the counter three separate times, and they reviewed the account information together, for up to eight minutes at a time. The Injured Worker testified at the District Hearing she did let Ms. Mulchay come around the desk and look at the computer screen at least three times. (Transcript, pg. 15 & 16.)

The Employer has submitted still photographs from the video noted above to document the Injured Worker did allow Ms. Mulchay to view the account information of Mr. Gehring. Mr. Gerot persuasively testified at hearing the file accessed was of Henry Gehring, and Ms. Mulchay did not have authorization to view Mr. Henry's [sic] account information. Mr. Gerot also testified that the Employer determined it was the Injured Worker who accessed Mr. Gehring's account. This evidence shows that the Injured Worker allowed Ms. Mulchay access to Mr. Gehring's account information when Ms. Mulchay did not have authorization to do so, in violation of the Code of Conduct Policy. The policy, training documentation, and testimony from Mr. Gerot noted previously show the Injured Worker was aware, or should have been aware, that allowing such improper access of Mr. Gehring's account information to Ms. Mulchay was a violation of the policy and could result in termination. Based on this evidence, it is found the requirements for a voluntary abandonment under the Louisiana-Pacific Corp. case have been met.

{¶ 39} One commissioner dissented from the majority. First, the dissenter pointed out that this court's decision in *State ex rel. Paysource USA, Inc. v. Indus. Comm.,* 10th Dist. No. 08AP-677 (June 30, 2009), upon which the commission relied to exercise its continuing jurisdiction, has been rejected numerous times by this court, specifically because this court did not consider the applicability of *Gross II* to the facts. Next, the dissenter stressed that pre-injury conduct cannot be used to break the causal relationship between a work-related injury and the disability because pre-injury conduct is never intervening. Specifically, the dissenter stated:

The majority distinction regarding a causal connection between the injury and the termination completely ignores [*State ex rel. Ohio State Univ. Cancer Research Hosp. v. Indus. Comm.,* 10th Dist. No. 09AP-1027, 2010-Ohio-3839]

There, the injured worker sustained a work-related lumbosacral sprain in 2009. For some time prior to the date of injury, he had been under investigation for numerous allegations he had violated the employer's sexual harassment policy spanning from 2004 to 2008. The injured and employer entered into two transitional work agreements. While working with restrictions, he was terminated from his position two months following the injury for "conduct unbecoming a medical center employee and violation of university policy." Id. at ¶ 22 of the Magistrate's Decision. In reliance on [*State ex rel. Ohio Welded Blank v. Indus. Comm.*, 10th Dist. No. 08AP-772, 2009-Ohio-4646] and Gross II, the court refused to apply the voluntary abandonment doctrine to the facts at hand, as the violative conduct occurred pre-injury.

Obviously, the injured worker's numerous violations of the sexual harassment policies of the employer were in no way related to or contemporaneous with the industrial injury. The court made it clear that was not the reason for rejecting the voluntary abandonment defense; instead, it was the simple temporal relationship between the violative conduct and the injury. The reason for this is not arbitrary. Louisiana-Pacific rests on the notion that a voluntary abandonment can be found when it is the injured worker's voluntary conduct *and not the injury* that is the cause of the loss of earnings. Had the employer in OSU Cancer Research Hospital been quicker in the investigation of the injured worker and terminated him prior to the date of injury, *there would never have been an injury*.

Likewise, had the Employer here been more prudent in the investigation of the Injured Worker's infractions and terminated her sooner, there would never have been a work injury. Instead, there was a work injury which, in hand, caused the Injured Worker's disability. It is undisputed the Injured Worker is unable to return to her former position of employment due to the injury she sustained while in the course of and arising out of her employment with the Employer.

Pre-injury conduct cannot be used to break the chain of causation between the injury and the disability, as the conduct is not intervening; only the Employer's decision to terminate is intervening, and allowing employers to do so and avoid paying temporary total disability compensation despite a legitimate work injury is simply inequitable and

against the mandate of R.C. 4123.95 as well as the entire intent of the workers' compensation system in Ohio.

(Emphasis sic.)

{¶ 40} 17. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 41} Relator asserts that, pursuant to *Gross II,* the voluntary abandonment doctrine cannot be applied to pre-injury conduct. In other words, relator asserts that pre-injury conduct can never be used to defeat or award TTD compensation. For the reasons that follow, the magistrate disagrees.

{¶ 42} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 43} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 44} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of

claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 45} In *State ex rel. Haddox v. Indus. Comm.,* 135 Ohio St.3d 307, 2013-Ohio-794, the Supreme Court of Ohio discussed the interplay of the payment of TTD compensation and the doctrine of voluntary abandonment. The court stated:

> The purpose of temporary-total-disability compensation is to compensate an injured employee for lost earnings during the period of disability while the injury heals. *State ex rel. McCoy v. Dedicated Transport, Inc.,* 97 Ohio St.3d 25, 2002 Ohio 5305, 776 N.E.2d 51, ¶ 35; *State ex rel. Ashcraft v. Indus. Comm.,* 34 Ohio St.3d 42, 517 N.E.2d 533 (1987). To qualify for temporary-total-disability compensation, an injured worker must demonstrate that he or she is medically unable to return to the former position and that the industrial injury is the reason for the loss of earnings. *State ex rel. McCoy* at ¶ 35.
>
> When the employee no longer has a loss of earnings, temporary-total-disability benefits terminate. This occurs when the employee returns to work or is capable of returning to work. Benefits for temporary total disability also terminate when the injury has reached maximum medical improvement. R.C. 4123.56. Benefits may also terminate if the employee voluntarily leaves the workforce. *Rockwell Internatl. v. Indus. Comm.,* 40 Ohio St.3d 44, 46, 531 N.E.2d 678 (1988). (After termination of benefits for temporary total disability, a claimant remains entitled to payments for medical expenses and may be eligible for compensation for any permanent disability. R.C. 4123.57 and 4123.66.)
>
> When an employee is fired for misconduct, the dismissal may be deemed a voluntary abandonment of employment "when it arises from the employee's decision to engage in conduct that he or she knows will result in termination." *State ex rel. Brown v. Hoover Universal, Inc.,* 132 Ohio St.3d 520, 2012 Ohio 3895, 974 N.E.2d 1198, ¶ 11; *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.,* 72 Ohio St.3d 401, 403, 1995 Ohio 153, 650 N.E.2d 469 (1995). The commission must look to the underlying facts and circumstances of the discharge, including its timing and nature, when classifying the employee's departure as voluntary or involuntary. *McCoy,* 97 Ohio St.3d 25, 2002 Ohio 5303, 776 N.E.2d 51, ¶ 20; *State ex rel. Smith v.*

> *Superior's Brand Meats, Inc.,* 76 Ohio St.3d 408, 411, 1996 Ohio 166, 667 N.E.2d 1217 (1996). The underlying principle is that the employee's departure from employment must be causally related to the injury for the employee to be eligible for temporary-total-disability compensation. *Rockwell Internatl. v. Indus. Comm.,* 40 Ohio St.3d at 46, 531 N.E.2d 678.

*Id.* at 310-11.

{¶ 46} In *Gross II,* the court reviewed the voluntary abandonment doctrine in the context of an employee who had been fired for the very conduct that resulted in his industrial injury. David Gross burned himself and two co-workers when he placed water in a pressurized deep fryer, heated the fryer, and then opened the lid. Gross was discharged for violating a workplace safety rule and defying repeated verbal warnings. The commission determined this was a voluntary abandonment of his employment and terminated Gross's TTD benefits.

> The *Haddox* court explained its ultimate decision in *Gross II,* stating:

> This court initially upheld the commission's decision, *State ex rel. Gross v. Indus. Comm.,* 112 Ohio St.3d 65, 2006 Ohio 6500, 858 N.E.2d 335 ("*Gross I*"), but later reconsidered and ordered the commission to reinstate benefits, *State ex rel. Gross v. Indus. Comm.,* 115 Ohio St.3d 249, 2007 Ohio 4916, 874 N.E.2d 1162 ("*Gross II*"). In *Gross II,* the court explained that it had not intended *Gross I* to create an exception to or an expansion of the voluntary-abandonment doctrine or to inject fault into the no-fault nature of workers' compensation. *Id.* at ¶ 19-21.

> Upon reconsideration, *Gross II* reiterated that the underlying issue in a voluntary-abandonment case is "whether his injury or his termination * * * is the cause of his loss of earnings." *Id.* at ¶ 23. "The distinctions between voluntary and involuntary departure are complicated and fact-intensive." *Id. Gross II* examined the evidence and concluded that KFC's termination letter—in which KFC stated that it was Gross's rule violation, resulting in the injury that had triggered the investigation and led to his subsequent termination—established that his discharge was related to the industrial injury. Thus, Gross's termination was involuntary and did not bar temporary-total-disability benefits. *Id.* at ¶ 25-26.

> This court had the opportunity to apply *Gross II* in *State ex rel. Upton v. Indus. Comm.,* 119 Ohio St.3d 461, 2008 Ohio 4758, 895 N.E.2d 161. In that case, Upton had been discharged for causing multiple motor vehicle accidents, including the one in which he was injured. The commission denied his request for temporary-total-disability compensation, filed prior to *Gross II,* because his discharge constituted a voluntary abandonment of his former position. *Id.* at ¶ 5. In a split decision, the court of appeals concluded that Upton did not have clear notice in advance of the grounds for his termination, so it was an involuntary departure. The court granted a writ of mandamus. *State ex rel. Upton v. Indus. Comm.,* 10th Dist. No. 06AP-594, 2007 Ohio 3283.
>
> We affirmed, stating: "*Gross II* held that if a claimant is injured by the same misconduct that led to his or her termination, eligibility for temporary total disability compensation is not compromised. *Gross II* controls and renders the court of appeals reasoning moot." 119 Ohio St.3d 461, 2008 Ohio 4758, 895 N.E.2d 161, at ¶ 8.

*Id.* at 311-12.

{¶ 47} The court held that if a claimant is injured by the same misconduct that led to their termination, eligibility for TTD compensation is not compromised. The court wanted to prevent employers from terminating employees in order to avoid paying TTD compensation. As the court stated in *State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.*, 98 Ohio St.3d 134, 2002-Ohio-7089, "we recognize the great potential for misconduct to preclude temporary total disability compensation. We therefore find it imperative to carefully examine the totality of the circumstances when such a situation exists." *Id.* at 411. Nothing in the court's decision in *Gross II* provides that pre-injury conduct can never be used to defeat payment of TTD compensation. To the extent courts have discussed the issue post-*Gross II,* courts have only said that pre-injury conduct has never been used to defeat an award of TTD compensation. As such, the magistrate concludes that there may be a situation where pre-injury conduct can defeat the payment of TTD compensation if it is found that the decision to terminate the injured worker is not a pre-textual excuse intended to avoid the employer's obligation to pay compensation.

{¶ 48} In light of the above, the magistrate finds that the commission did not abuse its discretion when it determined that relator's termination was unrelated to her

industrial injury—she was terminated because she allowed an unauthorized person to access a client's private information in violation of her employer's code of conduct policy.

{¶ 49} Here, relator's manager approached her on Thursday, October 3, 2013 and asked her if she had allowed a person to access another's personal account information. While relator acknowledged she knew the people involved, relator specifically denied allowing anyone behind the counter to view the client's personal account information. However, video evidence established that relator allowed an unauthorized person to review account information at least three times. As a result, relator's manager initiated the necessary paperwork to terminate relator's employment. As of Friday, October 4, 2013, relator's manager had the signatures necessary to terminate relator and, on Monday, October 7, 2013, relator was terminated because she allowed an unauthorized person to access a client's personal information in violation of the employer's code of conduct policy.

{¶ 50} The magistrate acknowledges that, on Monday, October 7, 2013, before her manager arrived to terminate her, relator tripped, injured herself, and returned to work with restrictions. However, there is no evidence that relator's manager or relator herself had any reason to believe that relator would ultimately file a workers' compensation claim, or that her injuries would be as extensive as they ultimately became. The decision to terminate relator was made on Thursday, October 3, 2013 and all necessary signatures were acquired by Friday, October 4, 2013.

{¶ 51} The magistrate finds the commission did carefully scrutinize the facts and did not abuse its discretion when it found relator was not entitled to an award of TTD compensation and this court should deny her request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).