[Cite as *State ex rel. Welsh Ents., Inc. v. Indus. Comm.*, 2020-Ohio-2801.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Welsh Enterprises, Inc., | : | |
| Relator, | : | |
| v. | : | No. 19AP-127 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on May 5, 2020

**On brief:** *Pietragallo Gordon Alfano Bosick & Raspanti, LLP,* and *Robert J. D'Anniballe, Jr.,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Jacquelyn McTigue,* for respondent Industrial Commission of Ohio.

**On brief:** *The Bainbridge Firm, LLC,* and *Casaundra L. Johnson,* for respondent Timothy Knight.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

NELSON, J.

{¶ 1}  Can you be accused of assaulting your boss, get fired, be convicted (by plea, no less) of the assault, be at least preliminarily barred by court order from even setting foot in that workplace, and then still gain subsequent temporary disability status under Workers' Compensation in connection with your (former) job?

{¶ 2}  At first blush, the question would seem to answer itself (and not in the disabled employee's favor).  But we conclude that the answer under Ohio law is: Maybe. More specifically, what we conclude is that the answer can depend on facts as found by the Industrial Commission.  And that where the Industrial Commission has evidence to

substantiate its view that the employee was fired not for assaulting his boss, but for some other reason that was not grounds for termination—and where the commission reached that determination after its hearing officers had heard testimony from and weighed the credibility of both the boss and the employee, and believed the latter—we are not authorized under the law to overturn that ruling based on potentially differing credibility assessments or weighting of the evidence. We swallow our instinct to find that the employee voluntarily abandoned his work, as based on facts as we might construe them from the cold record but that are different from those adopted by the commission in its fact-finding role.

{¶ 3} This matter apparently has its genesis in an injury that Timothy Knight sustained on March 28, 2017 while working as a mechanic/rebuilder in a salvage yard for Welsh Enterprises, Inc. The record reflects that on that day, Mr. Knight was spray-painting car parts "in a drying booth," assertedly without the benefit of respiration equipment, when he "was overcome by fumes." *See* March 28, 2018 Report of Donald Jay Weinstein, Ph.D., Psychologist, at 2. Mr. Knight reported: "I fell and hit my head. They found me laying [sic] on the floor." June 26, 2018 Report of David L. Chiarella, Ph.D., Psychologist, at 1. He was hospitalized and then treated at WorkCare before returning to work. *Id.*

{¶ 4} " 'After a time when I went to the hospital they asked me if I brought my respirator and I told them I don't have one. They never gave me one,' " Dr.Weinstein's report quotes Mr. Knight as saying. Weinstein Report at 2. " 'They kept me off work longer because I did not have a respirator * * *. [T]he hospital turned it [in to] OSHA and my employer accused me of calling OSHA.' " *Id.* Dr. Chiarella's report makes a similar reference, quoting Mr. Knight as saying: " 'They finally fired me.' He stated, 'My employer accused me of calling OSHA.' " Chiarella Report at 1.

{¶ 5} Mr. Knight filed a Workers' Compensation claim, which was allowed initially for "Closed head injury; acute bronchial asthma secondary to irritants; syncopal episode secondary to paint fume exposure; traumatic brain injury; adjustment disorder with mixed anxiety and depressed mood; [and] neurocognitive disorder." October 30, 2018 Staff Hearing Officer Report ("SHO Report").

{¶ 6} Mr. Knight returned to work, but didn't last there past autumn. Toward the end of September 2017, he was charged with having assaulted his boss, William Welsh, on September 14, 2017. Mr. Knight had worked for Mr. Welsh (and for Mr. Welsh's father) at

the eponymous Welsh Enterprises. The parties agree that his employment was terminated right then, on September 14, 2017.

{¶ 7} A police report from that day reflects Mr. Welsh's allegation that Mr. Knight had assaulted him, and Mr. Knight's account that "he admitted to pushing Mr. Welsh, but claimed it was in self defense." *See* Stipulated Item 9. The next week, another company employee, a Mr. Giles, visited the police to tell them, according to police notes of his statement, that "Mr. Knight [had] * * * lunged at Mr. Welsh[,] grabbing him" and causing him to fall back into a chair with "some abrasions and a ripped shirt" before "Mr. Knight was * * * escorted from the property." *Id.*

{¶ 8} On November 1, 2017, Mr. Knight was convicted of the assault. Although a later account from the Industrial Commission's staff hearing officer, as then reflected in the decision from this court's magistrate, recited that Mr. Knight "stated he pled guilty," the documentary record suggests that the plea was "NC," which we take to be "no contest." *See* Stipulated Item 5. In any event, the result in the criminal case was that the Steubenville Municipal Court found Mr. Knight guilty and sentenced him to a term of probation that included five days in jail (suspended). *Id.*

{¶ 9} After the conviction, on December 7, 2017, the Jefferson County Court of Common Pleas entered what appears to have been an ex parte Order of Protection decreeing among other things that Mr. Knight could not enter Mr. Welsh's business for a period of some five years (until December 7, 2022). *See* Stipulated Item 8. An accompanying Notice specified that "[t]he case will be tried on the date set forth in the Ex-Parte Protection Order unless continued by the Court," and a further Notice to Respondent established a "full hearing" date of December 14, 2017. *Id.* The record here does not appear to reflect the outcome of that envisioned trial or any further disposition of that protection order case.

{¶ 10} The record does show that Mr. Knight earlier had signed as having received and agreeing to written Welsh Enterprises policies including a statement that fighting on company property ("regardless of who started it") or "conviction of" or having entered a "plea of no contest to, or plea of guilty to * * * any * * * felony or misdemeanor other than minor traffic offenses may result in termination." Stipulated Item 17.

{¶ 11} On April 19, 2018, Mr. Knight filed a motion with the Industrial Commission seeking an award of temporary total disability compensation to begin as of March 28, 2018. That March 28, 2018 date was when Dr. Weinstein provided his report opining that Mr. Knight suffered from mild neurocognitive disorder with behavioral disturbance and from adjustment disorder with mixed anxiety and depressed mood. *See* Stipulated Item 23. Dr. Chiarella's report provided further support for that position, noting "[t]his is considered temporary until he receives sufficient treatment."

{¶ 12} A district hearing officer took evidence and considered Mr. Knight's temporary total disability claims on August 27, 2018. He noted that Welsh Enterprises "has challenged the Injured Worker's request for temporary total disability compensation, alleging that he voluntarily abandoned his employment when he was terminated by the Employer after engaging in a physical altercation with the Employer on 09/14/2017." DHO Report. However, the district hearing officer found that Welsh Enterprises failed to provide "sufficient evidence" as to "when or why the Injured Worker's employment was terminated" and offered "no specific documentation regarding the details" of the reason for the firing. *Id.* It was "the order of the District Hearing Officer that temporary total disability compensation is granted from 03/28/2018 through 08/27/2018 and to continue upon submission of appropriate medical proof of disability." *Id.*

{¶ 13} A staff hearing officer heard Welsh Enterprise's appeal on October 18, 2018. She agreed with the temporary total disability determination. SHO Order. She noted that Mr. Welsh testified to her that he had fired Mr. Knight on September 14, 2017 for violation of the written work rules (1) against fighting and (2) against being convicted of or pleading to non-traffic offenses. *Id.* at 7. "The parties did not dispute the Injured Worker was terminated on 09/14/2017," she observed, but she too seems to have been skeptical of the reasons advanced by Welsh Enterprises: she "notes that there is no evidence in writing" of which work rules were invoked. *Id.* Indeed, "it was not possible to terminate the injured worker" for his plea and conviction because those events came in November, well *after* his September firing. *Id.*

{¶ 14} And the staff hearing officer did not credit Welsh Enterprises' account that Mr. Knight was fired for fighting. She found that "the Employer has not persuasively established the Injured Worker violated this rule," as she was "not persuaded the Injured

Worker was fighting at work. Mr. Welsh alleges the Injured Worker assaulted him in his office. The Injured Worker denies he assaulted Mr. Welsh[,] testifying that while he was in the office Mr. Welsh came toward him and he put his arms up to stop him. The Injured Worker stated that Mr. Welsh then stated, you just assaulted me. In addition, while the Injured [Worker] was convicted of assault, the Injured Worker stated he pled guilty to avoid extensive legal fees and jail time." *Id.*

{¶ 15} Significantly, "[t]he Injured Worker was found to be credible." The staff hearing officer found Mr. Knight more credible, apparently, than she found Mr. Welsh (and his claim of termination for the not-yet-submitted plea). "Therefore, the Staff Hearing Officer [found that] the Employer ha[d] not proven the Injured Worker voluntarily abandoned his employment * * *." *Id.*

{¶ 16} The Industrial Commission thereafter declined further review.

{¶ 17} Welsh Enterprises then brought this action for mandamus ordering the Industrial Commission to vacate its award of temporary total disability compensation to Mr. Knight. Pursuant to custom and Loc.R. 13(M) of the Tenth District Court of Appeals, the case was assigned to the magistrate. After considering the arguments of the parties, the magistrate found that the court should deny Welsh Enterprises' request for the writ. August 28, 2019 Magistrate's Decision ("App'x").

{¶ 18} The magistrate properly recited that to gain the relief it seeks, Welsh Enterprises must show that it has a clear legal right to the relief and that the commission has a clear legal duty to provide it. App'x at ¶ 49, citing *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Welsh Enterprises can prevail on this review, then, only by establishing that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *Id.,* citing *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). That is, mandamus is not appropriate where the record reflects some evidence to support the commission's determinations. *Id.*, citing *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). We approach our review understanding that the commission as fact finder determines questions of credibility and the weight to be given evidence. *Id.*, citing *Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 19} After a disquisition on the law of voluntary abandonment in the workers' compensation context, and noting that an employee who is fired for the reason that he or

she has breached a known written work rule violation of which has been identified in advance as grounds for discharge has voluntarily abandoned the job, *see id.* at 9, quoting *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 403 (1995), the magistrate observed that there was some evidence to support the commission's conclusion that Welsh Enterprises did not prove that Mr. Knight was fired for having violated a written work rule:

> At the hearing, claimant provided his version of the events of September 14, 2017, and explained why he pled guilty [sic] to assault. It is not an abuse of discretion for the commission to rely on claimant's testimony and to find it both credible and persuasive. Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *Teece.* Furthermore, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's. *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373 (1996). Here, the commission found claimant's testimony to be persuasive and also found that relator's second reason to terminate claimant in September 2017 was immaterial given the conviction did not happen until November 2017.

App'x at ¶ 64.

{¶ 20} Welsh Enterprises mounts four objections to the Magistrate's Decision, urging us to find that the magistrate erred by: (1) "failing to incorporate pertinent and necessary facts"; (2) making or upholding a "decision [that] is inconsistent with the objective, non-self-serving stipulated evidence of record"; (3) "failing to appropriately apply applicable legal standards regarding voluntary abandonment of employment to the stipulated evidence of record"; and (4) upholding the commission's determination "even though [Mr. Knight's] separation from service on September 14, 2017 constituted voluntary abandonment of employment." September 12, 2019 Objections to Magistrate's Decision at 3. We consider these objections on an "independent review" to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civil Rule 53(D)(4)(d).

{¶ 21} Welsh Enterprises' first objection is, in the main, an objection to the style and ordering of the magistrate's recitation of the facts. *See, e.g., id.* at 6 ("Inexplicably, Paragraph 4 begins describing events that took place an entire year later, without any

reference to events which occurred in the intervening months") (emphasis omitted). Understandably, Welsh Enterprises would prefer that the magistrate have emphasized points that the company underscores (including hearsay, for example, from the police reports relating to the September 14, 2017 incident, but not [as the magistrate also refrained from quoting] hearsay from the psychological records asserting lack of equipment to filter chemical fumes, and references to hospital OSHA complaints said to have been attributed by Welsh Enterprises to Mr. Knight). But Welsh Enterprises is mistaken in suggesting that the magistrate overlooked evidence "relating to the filing of a criminal action, Knight's entry of a plea of guilty [sic], the resultant finding of guilty, the Civil Order of Protection, and [a rejection] of Unemployment Compensation Benefits by the Office of Unemployment Benefits." *Compare* Objections at 12 (emphasis omitted) *with* App'x at ¶ 43 ("relator submitted the following evidence," including (1) the employee handbook; "(2) evidence that * * * the city of Steubenville Municipal Court found claimant guilty of assault; (3) the September 18, 2017 determination by the Ohio Department of Job and Family Services' Office of Unemployment Compensation denying claimant's application for unemployment benefits because he was discharged by his employer on September 14, 2017 for provoking an argument with a supervisor; and (4) an order of protection dated December [7], 2017 ordering claimant to stay away from William David Welsh"). The Magistrate's Decision proceeded to quote from the staff hearing officer order noting Mr. Welsh's and Mr. Knight's differing accounts of the September 14 episode, finding Mr. Knight "credible" including in his assertion that "he pled guilty to avoid extensive legal fees and jail time," being "not persuaded the Injured Worker was fighting at work," and concluding that Welsh Enterprises "has not proven" voluntary abandonment "due to violation of a written work rule or rules." App'x at ¶ 44.

{¶ 22} Furthermore, the Magistrate's Decision specifically observed that Welsh Enterprises "did present some evidence which would indicate claimant was terminated from his employment for violating a written work rule, namely engaging in an altercation with his supervisor." App'x at ¶ 64. But the magistrate also noted that the commission had not weighted that evidence as heavily as it did Mr. Knight's contrary testimony, and the magistrate acknowledged that credibility and weighing questions are within the commission's domain. *Id.*

{¶ 23} There is no fair way to read the Magistrate's Decision as omitting reference to Welsh Enterprise's evidence or the substance of its arguments. We elaborate more on that evidence in our own decision here. Moreover, we are constrained to note that while Welsh Enterprises cites for persuasive effect the finding of the Office of Unemployment Compensation, Welsh Enterprises does not argue that principles akin to collateral estoppel preclude one administrative agency from reaching a factual determination arguably contrary to that of another administrative arm of the state, nor does it advance any other argument as to the legal significance here of that unemployment matter. And estoppel generally does not run against the state. We overrule the first objection to the Magistrate's Decision.

{¶ 24} Welsh Enterprises properly sets the framework for the legal analysis of this case by noting that "there is no question whatsoever *that* Knight was terminated by Relator [on September 14, 2017]; the issue in dispute is *why* Knight was terminated, which [issue] shall decide [whether] the doctrine of voluntary abandonment applies." Objections at 13. And Welsh Enterprises does not quarrel with the commission's allocation of the burden of proof to the employer on the voluntary abandonment issue. *Compare* staff hearing officer order at 2 ("the Employer has not sufficiently met its burden of proving a voluntary abandonment of employment") *with, e.g., State ex rel. Stevens v. Indus. Comm.*, 142 Ohio St.3d 313, 2015-Ohio-1352, ¶ 17 ("voluntary abandonment of all employment is an affirmative defense"); *State ex rel. Pacheco v. Indus. Comm.*, 157 Ohio St.3d 126, 2019-Ohio-2954, ¶ 26 (same effect).

{¶ 25} The company's final three objections boil down to a contention that the magistrate was wrong to uphold the commission's decision because Mr. Knight's testimony was not "credible" evidence on which the commission should have relied. Thus, Welsh Enterprises concludes its second objection by arguing: "The *only* evidence that contradicts that any assault occurred is Knight's own self-serving testimony; which is outweighed in multiples by the overwhelming, objective, non-self-serving evidence of record which demonstrated Knight was fired on September 14, 2017 as a result of his assault on his employer." Objections at 16 (emphasis in original). Similarly, in briefing its third objection, Welsh Enterprises argues that "the only evidence which contradicts that Knight's termination from employment was a result of anything other than his assault on his

employer is Knight's own self-serving testimony." *Id.* at 18 (emphasis in original). And Welsh Enterprises then states that, "the instant action is a result of the Commission's **abuse** of that discretion [to weigh evidence and assess credibility] in giving credibility to Knight's self-serving testimony that contradicts his guilty [sic] plea to the assault and the police record, and deciding in his favor when everything contained in the clear, objective, voluminous *Evidence Stipulation* would point to the contrary." *Id.* at 19 (emphasis in original). The fourth objection hinges on the previous two, arguing that because the commission should have found voluntary abandonment, it consequently should have rejected the temporary total disability claim and the magistrate should have so found. *Id.* at 19-20.

{¶ 26} Welsh Enterprises' repeated concession that Mr. Knight's testimony to the commission is "evidence," no matter how "self-serving," seems correct, and Welsh Enterprises offers us no authority to the contrary. But the company's view that Mr. Knight's evidence "is outweighed in multiples" by other evidence is wholly unavailing, for the same reason that the company cannot prevail by telling us that the commission erred by "giving credibility" to Mr. Knight's testimony. We cannot second guess the commission's judgments either as to witness credibility or on the proper weight to accord particular evidence. As the Supreme Court of Ohio recently has reminded us: "The commission is the exclusive finder of fact and has sole responsibility to evaluate the weight and credibility of the evidence." *State ex rel. Vonderheide v. Multi-Color Corp.*, 156 Ohio St.3d 403, 2019-Ohio-1270, ¶ 7, citing *State ex rel. Perez v. Indus. Comm.*, 147 Ohio St.3d 383, 2016-Ohio-5084, ¶ 20. Thus, "[s]o long as the commission's order is based on some evidence in the record, a court should not find an abuse of discretion." *Vonderheide* at ¶ 7, citing *Perez* and *State ex rel. Packaging Corp. of Am. v. Indus. Comm.*, 139 Ohio St.3d 591, 2014-Ohio-2871, ¶ 29.

{¶ 27} No matter how much Welsh Enterprises urges us to do so—and that is the brunt of the company's entire brief on objections—we are instructed not to reassess the commission's credibility determinations or re-weigh the evidence under some sort of manifest weight analysis. "Questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers." *Teece*, 68 Ohio St.2d at 169. It is only "[w]here there is no evidence upon which the commission could have based its factual

conclusion [that] an abuse of discretion is present and mandamus becomes appropriate." *Id.* at 167 (citations omitted).

{¶ 28} Here, after having heard from both sides, the staff hearing officer believed Mr. Knight and did not credit Welsh Enterprises as to why it fired him. Therefore, the staff hearing officer found that Welsh Enterprises had not met its burden of proof on voluntary abandonment. *See* SHO Order at 2. The "some evidence"/"no evidence" dichotomy applies directly to this sort of commission determination. *State ex rel. Robinson v. Indus. Comm.*, 138 Ohio St.3d 471, 2014-Ohio-546, ¶ 19 (commission order "was supported by some evidence" on voluntary abandonment pursuant to termination "for violating a written work rule"); *State ex rel. Sheets v. Indus. Comm.*, 10th Dist. No. 16AP-22, 2017-Ohio-1169, ¶ 14, 17 (mandamus not appropriate; there was "some evidence to support the commission's conclusions" that termination was based on work-policy violation). An employee's intent with regard to questions of voluntary abandonment "is a factual determination for the commission" after an evaluation of all relevant circumstances, and because the "commission is 'exclusively responsible for evaluating the weight and credibility of the evidence,' " its "conclusion as to the credibility of [the employee's] testimony" governs that determination. *State ex rel. Klein v. Precision Excavating and Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, ¶ 39, 42 (citations omitted) (refusing mandamus where the "record contains some evidence supporting the commission's factual determination" on voluntary abandonment, *see* ¶ 40).

{¶ 29} The staff hearing officer was understandably skeptical of "testimony from Mr. Welsh at hearing who stated the Injured Worker was fired for violation of * * * two written work rules" including " '[c]onviction of, plea of no contest * * * or * * *guilty to' " a criminal offense. *See* SHO Order at 2. Welsh Enterprises itself has maintained that Mr. Knight was " 'terminated on 09/14/17,' " Objections at 12-13, and the record is clear that he had not pleaded to or been convicted of assault at that time. Mr. Welsh's reported testimony that the November plea and conviction was one of two grounds for the September firing could call into question his and his company's credibility as to the actual reasons for the termination. Although we find no requirement in the law for Welsh Enterprises to have contemporaneous documentation of the reasons for the firing, *compare* SHO Order at 2, we also find no requirement that the commission was obliged to accept the employer's

account of its rationale, especially in the face of contrary testimony from the employee, *see id.* As the exclusive judge of witness credibility, the commission was empowered to make this call.

{¶ 30} By the same token, the commission was not obliged to accept Welsh Enterprises' contention that Mr. Knight was fired for fighting. Indeed, after hearing from Mr. Knight, the staff hearing officer found that "the Employer has not persuasively established the Injured Worker violated this rule." *Id.* "The Injured Worker was found to be credible." *Id.* And he "denie[d] he assaulted Mr. Welsh[,] testifying that while he was in the office, Mr. Welsh came toward him and he put his arms up to stop him." *Id.* Mr. Knight also averred, and the hearing officer believed, that "he pled guilty to avoid extensive legal fees and jail time." *Id.* The plea and conviction were not conclusive proof of assault for civil law purposes, and the commission acted within its scope to assess Mr. Knight's credibility on that score. "In Ohio, [even] guilty pleas are not generally given preclusive effects in subsequent civil actions: 'Neither a plea of guilty in a criminal prosecution, nor the judgment founded upon it, are conclusive against the defendant in a civil action.' " *State v. C.A.*, 10th Dist. No. 14AP-746, 2015-Ohio-3437 ¶ 17, quoting *Clark v. Irvin*, 9 Ohio 131 (1839), syllabus, and citing *Allstate Ins. Co. v. Cartwright*, 2d Dist. No. 15472, 1997 Ohio App. Lexis 2920 (June 27, 1997), for the continuing vitality of *Clark.*

{¶ 31} We have said that while a guilty plea and consequent record of conviction may be admissible evidence to prove facts essential to the criminal judgment, "the *admissibility* of such evidence does not speak to the *sufficiency* of it. Ohio law considers guilty pleas in a subsequent civil case as equivalent to any other confession evidence, evidence that may be explained or rebutted, not res judicata." *C.A.* at ¶ 17 (emphasis in original), citing further authority including Weissenberger's Ohio Evidence (evidence offered pursuant to the Evidence Rule 803(22) hearsay exception for "judgment of previous conviction" is "not conclusive of the fact sought to be proved, and the opponent may explain the prior conviction and may offer any evidence rebutting the fact sought to be proved by the proponent"). Here, Mr. Knight offered his testimony to explain or rebut the conviction. The staff hearing officer hearing the workers' compensation matter bought the explanation, finding it credible. (We also note that if the plea was one of no contest, as is suggested by the record, that plea and conviction generally would not even be admissible under the

hearsay rules in a court proceeding, even if the potential punishment for the misdemeanor had been more than one year. Evid.R. 803(22).)

{¶ 32} Again, the plea and conviction were not themselves grounds for the September firing, and, with "the issue in dispute [being] *why* Knight was terminated," Objections at 13, there is no need for us speculate here as to whether Mr. Knight would have entered the plea had he not been fired six weeks earlier. For much the same reason, we need not for this action as pleaded and argued weigh the December 7 protective order that was issued in advance of a contemplated December 14 trial, or speculate as to what happened on December 14, or as to whether Mr. Knight might have contested the order, or contested it differently, had he not already been fired; the staff hearing officer did not find that it outweighed her assessment of Mr. Knight's testimony and of Mr. Welsh's.

{¶ 33} In sum, the commission through its staff hearing officer made its own credibility determinations and conducted its own weighing of evidence. And there was some evidence in support of its conclusion that Welsh Enterprises "has not persuasively established" that it fired Mr. Knight for the reasons it claimed. *See* SHO Order at 2. We are not at liberty to accept Welsh Enterprises' invitation to conclude that Mr. Knight's testimony, as believed by the commission, "is outweighed" by other evidence. Consistent with the standards that govern us in the workers' compensation mandamus cases that we regularly assess, we overrule Welsh Enterprises' second, third, and fourth assignments of error.

{¶ 34} Having overruled Welsh Enterprises' objections to the magistrate's decision, we adopt that decision as amplified above, and we deny Welsh Enterprises' request for a writ of mandamus against the commission.

*Objections overruled; writ of mandamus denied.*

LUPER SCHUSTER, J., concurs.
DORRIAN, J., concurs in judgment only.
_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Welsh Enterprises, Inc., | : | |
| Relator, | : | |
| v. | : | No. 19AP-127 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on August 28, 2019

*Pietragallo Gordon Alfano Bosick & Raspanti, LLP,* and *Robert J. D'Anniballe, Jr.*, for relator.

*Dave Yost,* Attorney General, and *Jacquelyn McTigue,* for respondent Industrial Commission of Ohio.

*The Bainbridge Firm, LLC,* and *Casaundra L. Johnson,* for respondent Timothy Knight.

### IN MANDAMUS

{¶ 35} Relator, Welsh Enterprises, Inc., has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which awarded temporary total disability ("TTD") compensation to respondent Timothy Knight ("claimant") and ordering the commission to find that claimant is not entitled to that compensation on grounds that claimant had

voluntarily abandoned his employment with relator pursuant to *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995).

Findings of Fact:

{¶ 36} 1. Claimant sustained a work-related injury on March 28, 2017 while employed as a mechanic/rebuilder for relator. On that day, claimant was painting car parts when he passed out and fell.

{¶ 37} 2. Claimant's workers' compensation claim was initially allowed for the following conditions: "Closed head injury; acute bronchial asthma secondary to irritants; syncopal episode secondary to paint fume exposure."

{¶ 38} 3. Following a short absence from work, claimant was able to return to his employment with relator.

{¶ 39} 4. In a report dated March 28, 2018, Donald J. Weinstein, Ph.D., opined that claimant suffered from mild neurocognitive disorder with behavioral disturbance, and adjustment disorder with mixed anxiety and depressed mood. Claimant filed a C-86 motion asking the commission to additionally allow his claim for those conditions and also sought an award of TTD compensation beginning March 28, 2018, the date of the report.

{¶ 40} 5. David L. Chiarella, Ph.D., examined claimant on behalf of the Ohio Bureau of Workers' Compensation ("BWC"). In his June 26, 2018 report, Dr. Chiarella identified the medical records which he reviewed, provided his findings on examination, administered certain psychological testing, and concluded that claimant's claim should be additionally allowed for anxiety disorder with mixed anxiety and depressed mood, as well as a neurocognitive disorder, and that those conditions also caused claimant to be temporarily and totally disabled from September 15, 2017 through September 28, 2018.

{¶ 41} 6. On August 27, 2018, the matter of claimant's allowed conditions was heard before a district hearing officer ("DHO") who concluded that claimant's claim should be additionally allowed for the following conditions: "traumatic brain injury; * * * neurocognitive disorder," and "adjustment disorder with mixed anxiety and depressed mood."

{¶ 42} 7. That same day, the same DHO considered whether or not claimant was entitled to an award of TTD compensation. At the hearing, relator argued that claimant had voluntarily abandoned his employment and was terminated on September 14, 2017

when he was involved in an altercation at work. Because relator did not provide any specific documentation regarding the details of claimant's termination, the DHO found that relator had failed to meet its burden of proving that claimant had voluntarily abandoned his employment. As such, the DHO awarded the requested period of TTD compensation from March 28 through August 27, 2018 and continuing.

{¶ 43} 8. Relator's appeal was heard before a staff hearing officer ("SHO") on October 18, 2018. At that time, relator submitted the following evidence in support of the argument claimant had been terminated for having violated a specific written work rule: (1) relator's employee handbook which includes the following two examples of reasons for disciplinary action or dismissal to include: "Fighting on Welsh Enterprises, Inc. property regardless of who started it, may result in the termination of the parties involved" and "Conviction of, plea of contest to, or plea of guilty to, or acceptance on any pre-trial diversion in lieu of any morals charge, felony or misdemeanor other than minor traffic offenses, may result in termination"; (2) evidence that, on September 14, 2017, the city of Steubenville Municipal Court found claimant guilty of assault; (3) the September 18, 2017 determination by the Ohio Department of Job and Family Services' Office of Unemployment Compensation denying claimant's application for unemployment compensation benefits because he was discharged by his employer on September 14, 2017 for provoking an argument with a supervisor; and (4) an order of protection dated December 1, 2017 ordering claimant to stay away from William David Welsh.

{¶ 44} 9. The SHO agreed with the DHO's determination that claimant's claim should be additionally allowed for the requested conditions and relied on the medical evidence to find that claimant had been unable to return to his former position of employment beginning March 28, 2018. The SHO further determined that relator failed to meet its burden of proving that claimant voluntarily abandoned his employment due to the violation of two written work rules that were known or should have been known by claimant to be terminable offenses pursuant to *Louisiana-Pacific*. Specifically, the SHO order provides:

> Staff Hearing Officer notes the Employer argues temporary total disability compensation should be denied because the Injured Worker voluntarily abandoned his employment on 09/14/2017 due to a violation of two written work rules that were known or should have been known by the Injured

Worker to be terminable offenses, pursuant to the **Louisiana-Pacific** case. It is noted the Injured Worker was terminated from employment on 9/14/2017, per testimony from Mr. Welsh at hearing who stated the Injured Worker was fired for violation of the following two written work rules: "Fighting on Welsh Enterprises, Inc., property, regardless of who started it, may result in the termination of the parties involved," and "Conviction of, plea of no contest to, or plea of guilty to, or acceptance of any pre-trial diversion in lieu of any morals charge, felony or misdemeanor other than minor traffic offenses, may result in termination."

Initially, Staff Hearing Officer notes there is no evidence in writing of the Injured Worker's termination and the policies and/or rules violated resulting in his termination. The parties did not dispute the Injured Worker was terminated on 09/14/2017. Regarding the second work rule, Staff Hearing Officer finds it was not possible to terminate the Injured Worker for violation of this rule because the conviction did not occur until 11/20/2017 more than two months after his termination. Regarding the alleged violation of the aforementioned first work rule, Staff Hearing Officer finds the Employer has not persuasively established the Injured Worker violated this rule as Staff Hearing Officer is not persuaded the Injured Worker was fighting at work. Mr. Welsh alleges the Injured Worker assaulted him in his office. The Injured Worker denies he assaulted Mr. Welsh testifying that while he was in the office, Mr. Welsh came toward him and he put his arms up to stop him. The Injured Worker stated that Mr. Welsh then stated, you just assaulted me. In addition, while the Injured [Worker] was convicted of assault, the Injured Worker stated he pled guilty to avoid extensive legal fees and jail time. The Injured Worker was found to be credible. Therefore, Staff Hearing Officer finds the Employer has not proven the Injured Worker voluntarily abandoned his employment due to violation of a written work rule or rules that were known or should have been known by the Injured Worker to be terminable offenses, as required by the **Louisiana-Pacific** case.

Therefore, Staff Hearing Officer finds the Employer has not sufficiently met its burden of proving a voluntary abandonment of employment to preclude payment of temporary total disability compensation.

All evidence on file and presented at hearing was reviewed and considered in rendering this decision.

**{¶ 45}** 10. Relator's appeal was refused by order of the commission mailed November 21, 2018.

**{¶ 46}** 11. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

**{¶ 47}** For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

**{¶ 48}** The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

**{¶ 49}** In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

**{¶ 50}** Relator asserts the commission abused its discretion when it determined that its evidence was insufficient to support the finding that claimant had voluntarily abandoned his employment when he was involved in an altercation with his supervisor, William Welsh. Relator asserts the evidence that claimant pled guilty to assault, an order of protection was issued, and claimant was denied unemployment compensation because he had been discharged for being involved in an altercation with his supervisor clearly established that claimant was not entitled to the requested TTD compensation.

{¶ 51} This case must be considered within the historical context in which the voluntary abandonment doctrine has developed. In *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.*, 29 Ohio App.3d 145 (10th Dist.1985), Ernesto Rosado sustained a work-related injury. At some point in time, Rosado voluntarily retired from his job with Jones & Laughlin. Based on Rosado's voluntary retirement, Jones & Laughlin argued in this court that Rosado should not be entitled to an award of TTD compensation. Because Jones & Laughlin had failed to raise the issue before the commission, this court denied Jones & Laughlin's request for a writ of mandamus ordering the commission to vacate its award of TTD compensation; however, this court did address the issue of whether or not an employee's voluntary retirement from the workforce for reasons unrelated to an industrial injury precludes the payment of TTD compensation.

{¶ 52} After citing the syllabus rule of *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982), this court stated:

> [T]he industrial injury must not only be such as to render the claimant unable to perform the functions of his former position of employment, but it also must prevent him from returning to that position.

*Jones & Laughlin* at 147. Thereafter, this court set forth the issue before it:

> Accordingly, the issue before us is whether a person who has voluntarily taken himself out of the work force and abandoned any future employment by voluntarily retiring is prevented from returning to his former position of employment by an industrial injury which renders him unable to perform the duties of such former position. This raises an issue of causal relationship.

*Id.* Ultimately, this court concluded as follows:

> [O]ne who has voluntarily retired and has no intention of ever returning to his former position of employment is not prevented from returning to that former position by an industrial injury which renders him unable to perform the duties of such former position of employment. A worker is prevented by an industrial injury from returning to his former position of employment where, but for the industrial injury, he would return to such former position of employment. However, where the employee has taken action that would preclude his returning to his former position of employment,

even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position of employment. Such action would include such situations as the acceptance of another position, as well as voluntary retirement.

*Id.*

{¶ 53} It was not until *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42 (1987), that the foundation for the voluntary abandonment doctrine as we know it today began to take shape. In that case, Nelson C. Ashcraft was injured while working in the scope of his employment as a welder and received TTD compensation for a period of time. After his TTD compensation ceased, Ashcraft was incarcerated in West Virginia on a felony charge, subsequently convicted and imprisoned for first degree murder. Thereafter, Ashcraft sought TTD compensation from the commission.

{¶ 54} The commission ordered Ashcraft's motion suspended until he was released from incarceration. As such, Ashcraft was precluded from receiving any TTD compensation while incarcerated.

{¶ 55} Ashcraft filed a mandamus action in this court seeking an order compelling the commission to hear the application for TTD compensation. This court granted the writ and the matter was appealed to the Supreme Court of Ohio.

{¶ 56} After considering the purpose of TTD compensation and considering the holding from *Jones & Laughlin,* the *Ashcraft* court, at 44, reiterated that the crux of the decision in *Jones & Laughlin* was:

> The crux of this decision was the court's recognition of the two-part test to determine whether an injury qualified for temporary total disability compensation. The first part of this test focuses upon the disabling aspects of the injury, whereas the latter part determines if there are any factors, other than the injury, which would prevent the claimant from returning to his former position. The secondary consideration is a reflection of the underlying purpose of temporary total compensation: to compensate an injured employee for the loss of earnings which he incurs while the injury heals.

{¶ 57} The *Ashcraft* court concluded that when a claimant has voluntarily removed himself or herself from the workforce, he or she no longer suffers a loss of earnings because

he or she is no longer in a position to return to work. The court concluded that this logic would apply whether the claimant's abandonment of his position was temporary or permanent. Ultimately, the court concluded that Ashcraft's incarceration constituted a factor which, independently of his previously recognized work-related injury, precluded his receipt of TTD compensation. In so finding, the *Ashcraft* court stated, at 44:

> While a prisoner's incarceration would not normally be considered a "voluntary" act, one may be presumed to tacitly accept the consequences of his voluntary acts. When a person chooses to violate the law, he, by his own action, subjects himself to the punishment which the state has prescribed for that act.

{¶ 58} In *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44 (1988), the court again considered whether or not retirement should preclude the payment of TTD compensation. In that case, Rollin Sharp sustained a low back injury in the course of his employment with Rockwell International. TTD compensation was paid until such time as Sharp was released to return to light-duty work. Ultimately, Sharp retired from his employment but, thereafter, filed an application to reactivate his claim and requested TTD compensation. Rockwell International argued that TTD compensation should not be paid to Sharp because he had voluntarily retired from his employment.

{¶ 59} Ultimately, the Supreme Court found that TTD compensation was payable based on the commission's finding that Sharp's retirement was causally related to his industrial injury and, thus, was not voluntary. Specifically, the *Rockwell* court stated, at 46:

> Neither *Ashcraft* nor *Jones & Laughlin* states that *any* abandonment of employment precludes payment of temporary total disability compensation; they provide that only voluntary abandonment precludes it. While a distinction between voluntary and involuntary abandonment was contemplated, the terms until today have remained undefined. We find that a proper analysis must look beyond the mere volitional nature of a claimant's departure. The analysis must also consider the reason underlying the claimant's decision to retire. We hold that where a claimant's retirement is causally related to his injury, the retirement is not "voluntary" so as to preclude eligibility for temporary total disability compensation.

(Emphasis sic.)

{¶ 60} In 1995, the Supreme Court decided the seminal case of *Louisiana-Pacific*. In that case, Patrick Longmore sustained an injury while in the course of his employment with Louisiana-Pacific Corporation, a self-insured employer under Ohio's workers' compensation laws, who began paying TTD compensation. Longmore was released to return to work on December 17, 1990; however, he did not report to work nor did he call in on December 17, 18, or 19, 1990. In a letter dated December 20, 1990, Louisiana-Pacific notified Longmore that his failure to report to work for three consecutive days violated the company's policy and he was terminated.

{¶ 61} The commission awarded Longmore TTD compensation and this court denied Louisiana-Pacific's request for a writ of mandamus.

{¶ 62} On appeal, the Supreme Court granted the writ of mandamus after finding that Longmore's termination did bar his receipt of TTD compensation. Specifically, the *Louisiana-Pacific* court stated, at 403:

> Recognizing the parallels underlying incarceration and firing, we observed in *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202, 1204:
>
> "We agree that firing can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *"
>
> Examining the present facts, we find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with *Ashcraft* and *Watts*—i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.

{¶ 63} Here, the SHO specifically noted that relator had failed to present any evidence in writing to corroborate its assertion that claimant was terminated for violation of a written work rule on September 14, 2017. Although Welsh testified that claimant

assaulted him in his office, claimant denied same, and asserted that as Welsh came toward him, he put up his arms to stop Welsh. Although claimant acknowledged that he pled guilty to assault, he indicated that he did so to avoid extensive legal fees and jail time. The SHO found claimant's testimony to be credible.

{¶ 64} Here, relator did present some evidence which would indicate claimant was terminated from his employment for violating a written work rule, namely engaging in an altercation with his supervisor. However, none of relator's evidence was in writing and none was contemporaneous to the date of discharge. At the hearing, claimant provided his version of the events of September 14, 2017, and explained why he pled guilty to assault. It is not an abuse of discretion for the commission to rely on claimant's testimony and to find it both credible and persuasive. Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *Teece.* Furthermore, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's. *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373 (1996). Here, the commission found claimant's testimony to be persuasive and also found that relator's second reason to terminate claimant in September 2017 was immaterial given the conviction did not happen until November 2017.

{¶ 65} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated the commission abused its discretion when it awarded TTD compensation in favor of claimant, and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).